**James W. Burns, Defendant in Error, v. William J. Jackson, Receiver for Chicago & Eastern Illinois Railroad Company, Plaintiff in Error.**

1. MASTER AND SERVANT—*extent to which assumed risk a defense in actions under Federal Employers' Liability Act.* The State courts must be governed by the construction placed upon the Federal Employers' Liability Act by the federal courts; and it has been the uniform holding of those courts that the doctrine of assumed risk is available as a defense in all cases brought under such act, except where the violation of a federal statute enacted for the safety of employees contributed to the injury complained of.

2. MASTER AND SERVANT—*assumption of risk in attempting to repair defective air pipe line in action under Federal Employers' Liability Act.* In an action under the Federal Employers' Liability Act, where plaintiff, a freight conductor engaged in interstate commerce, charged with the duty of picking up freight and coal cars and of setting out other cars as directed, sustained injury while trying to connect defective appliances, and testified that, upon the discovery of a leak in the air-pipe line, he had the right to decide whether the car in question should be cut out or he should attempt to repair the leak, and that he chose the latter course, in so doing he assumed the risk of all danger incident to such course, and the defense of assumed risk was available to defendant, as neither the allegations of the declaration nor the evidence showed any violation of the Federal Safety Act, which was the only federal statute enacted for the safety of employees which would have been applicable in the circumstances.

3. INSTRUCTIONS—*impropriety of instruction ignoring applicable*

*defense.* In an action under the Federal Employers' Liability Act by a freight conductor engaged in interstate commerce, it was reversible error to give an instruction directing a verdict upon the finding of certain facts for plaintiff but ignoring the defense of assumed risk, where, under the particular circumstances, such defense was available, and such instruction was not cured by instructions given for defendant.

4. Instructions—*necessity that charge in language of act embody construction thereof by courts.* In an action under the Federal Employers' Liability Act in which assumed risk was a defense, an instruction which was an abstract of certain provisions of the act, including section 4 (Cahill's Ill. St. ch. 114, ¶ 324), which covers the doctrine of assumed risk, was erroneous in ignoring the modified construction given that section by the federal courts.

Error to the Circuit Court of Marion county; the Hon. Thomas E. Ford, Judge, presiding. Heard in this court at the October term, 1921. Reversed and remanded. Opinion filed March 24, 1922.

Homer T. Dick, Charles O. Fowler, L. M. Kagy, Edward C. Craig, Donald B. Craig and Fred H. Kelly, for plaintiff in error.

Charles H. Holt, for defendant in error.

Mr. Presiding Justice Higbee delivered the opinion of the court.

This is an action of trespass on the case brought by the defendant in error, James W. Burns, and who will be hereinafter referred to as the plaintiff, against the plaintiff in error, who will hereinafter be referred to as the defendant, to recover damages for personal injuries alleged to have been sustained while plaintiff, a railroad conductor, was endeavoring to stop an air leak in a train-line pipe on one of defendant's freight cars.

The case was tried at the January term, A. D. 1921, of the Marion circuit court and resulted in a verdict finding the defendant guilty and assessing plaintiff's damages at $750. Judgment was entered for the amount of the verdict and defendant sued out a writ of error.

The declaration consisted of one original and two additional counts. The first additional count of the declaration, after apt averments of the ownership and operation by defendant of the railroad from the City of Chicago in the State of Illinois to the station of Chaffee in the State of Missouri, and elsewhere, and that both parties were engaged in interstate commerce, alleged, in substance, that plaintiff was in the employ of the defendant as a railroad freight conductor charged with the duty of superintending, moving and operating a certain freight train from the Salem yards in the county of Marion and State of Illinois, to the station of Chaffee in the State of Missouri; that it was his duty to pick up certain freight and coal cars at different points and to set out certain other freight and coal cars at such points as the defendant, through its employees, might direct; that said freight train was equipped with air brakes, train-line pipes, unions, connections, angle cocks, etc., used in the operation of the brakes on said train; that it was the duty of the plaintiff to see if such air brakes were properly connected and working properly and, in case of a temporary leak in the train-line pipe and air brakes, to adjust the same; that it was the duty of the defendant to furnish and equip the cars in said train with good and sufficient brakes, train lines, pipes, unions, connections, sleeves, angle cocks, etc., that were not defective or insufficient; that the defendant did not regard its duty in this behalf but wholly neglected and failed so to do; that at the station of Marion in the State of Illinois, defendant negligently furnished and provided plaintiff with a certain freight car or coal car and directed plaintiff to pick up the same, on which the air brakes, train-line pipes, unions and connections and the appliances in connection therewith were defective and insufficient; that the same leaked air and caused the brakes to set so that the train could not be moved or operated and while plain-

tiff in the discharge of his duty was trying to connect the same, the first section of the line-pipe connection or attachment thereof blew off and plaintiff's left hand was driven with great force and violence to and against the bottom of said coal and freight car and a certain iron beam there, whereby and by means whereof plaintiff sustained damages, etc. The original count of the declaration was substantially like the first additional count, except that it was more general in its averments and did not allege that plaintiff was specifically directed to pick up the car in question, but that it was the duty of plaintiff to pick up this car. The second additional count was very much like the first additional count but set forth the duties of the respective parties substantially as follows: That it was the duty of the plaintiff, in case the air brakes should set or fail to release or to operate properly, to investigate and ascertain if possible the trouble, and, if the same could be released or adjusted by the tightening of the connections, etc., to do so; that it was the duty of the defendant to furnish plaintiff cars properly equipped and furnished with responsible, good and sufficient air brakes, train-line pipes, unions, sleeves, connections, angle cocks and attachments that were not defective or insufficient and to furnish and equip the said coal car in like manner so that said car could be picked up and placed in said train of cars and hauled and conducted from the said station of Marion to the station of Chaffee in the State of Missouri in safety; that plaintiff pursuant to his duty and employment as aforesaid was investigating and trying to release said brakes and trying to tighten one of the connections in the said train-line pipes on said coal car and the first section, or a part of the said train-line pipe, connection or attachment, blew off with great force and violence and the plaintiff's left hand was injured.

The defendant filed the general issue to all three counts and six special pleas. Demurrers were sus-

tained to all these special pleas on the ground that they amounted to the general issue and defendant went to trial on that plea. On the 18th day of June, 1920, plaintiff left West Frankfort, Illinois, for Marion, Illinois, as conductor in charge of an engine and caboose and a train crew. At Marion they were to pick up a train of 16 cars of coal and one empty coal car. These cars were all standing on track No. 5, in the south end of the yards at Marion. The caboose was disconnected from the engine and left on the main track and the engine connected with the south end of the 17 freight cars above mentioned. It appears that plaintiff and his brakeman examined these cars before they were removed from track 5 and discovered a leak in the train-line pipe on a car about the 16th or 17th from the engine. This car was cut out of the train and the other 16 cars were switched out on the main track to be connected with the caboose. After the 16 cars were out on the main track it was discovered that there was a leak of air from the train-line pipe on the 7th or 8th car from the engine, so that the engineer could not release the brake. Plaintiff testified that, thinking he could repair this leak, he sent for a monkey wrench and attempted to tighten the connection and while doing so the sleeve or some other part of the connection blew off and he sustained an injury to his hand.

It is admitted that the parties to this action were, at the time of the accident, engaged in interstate commerce so that beyond question this suit is to be covered by the Federal Employers' Liability Act. Section 4 of that Act (Cahill's Ill. St. ch. 114, ¶ 324) provides: "In any action brought against any common carrier under or by virtue of any of the provisions of this act to recover damages for injuries to, or the death of any of its employes, such employe shall not be held to have assumed the risks of his employment in any case where the violation by such common carrier of any

statute enacted for the safety of employes contributed to the injury or death of such employe." It is contended by defendant that the injury complained of was not the result of the violation by defendant of any statute enacted for the safety of employees and that therefore the doctrine of assumed risk was available to it as a defense in this suit. As has been frequently held, this court must be governed by the construction placed upon the Federal Employers' Liability Act by the federal courts. It has been the uniform holding of those courts that the doctrine of assumed risk is available as a defense in all cases brought under the Federal Employers' Liability Act, except where the violation of a Federal statute enacted for the safety of employees contributed to the injury complained of. One of the leading cases so holding is that of *Seaboard Air Line Ry. v. Horton*, 233 U. S. 492 [8 N. C. C. A. 834]. In that case the court said: "It seems to us that section 4, in eliminating the defense of assumption of risk in the cases indicted, quite plainly evidences the legislative intent that in all other cases such assumption shall have its former effect as a complete bar to the action." In *Chicago, R. I. & P. Ry. Co. v. Ward*, 252 U. S. 18, the court said: "We have had occasion to deal with the matter of assumption of risk in cases where the defense is applicable under the Federal Employers' Liability Act (Comp. St. secs. 8657-8665) being those in which the injury was caused otherwise than by the violation of some statute enacted to promote the safety of employees. As this case was not one of the latter class, assumption of risk was a defense to which the defendants below were entitled." Among other federal cases so holding are *Boldt v. Pennsylvania R. Co.*, 245 U. S. 441 [19 N. C. C. A. 461], and *Jacobs v. Southern Ry. Co.*, 241 U. S. 229. It would follow from these authorities, that if some violation by defendant of a federal statute enacted for the safety of employees did not contribute to

the injury complained of, the doctrine of assumed risk was available to defendant as a defense in this suit and, if established, would be a bar to recovery by plaintiff. The only federal statute enacted for the safety of employees which it is contended could be applicable to the circumstances of this case is the Federal Safety Act. In our opinion, the allegations of the declaration were not sufficient to charge a violation of this statute, neither do we think the evidence shows any violation of the same. If we are correct in this view, the defense of assumed risk was available to defendant in this case. A very elaborate discussion of the law of assumed risk is found in the case of *Wheeler v. Chicago & W. I. R. Co.*, 267 Ill. 306. In that case the Supreme Court of this State said: "The law has long been settled in this State that the servant, when he engages in an employment, does so in view of the risks incident thereto. * * * The servant assumes all the ordinary risks of the service and all the extraordinary risks of which he knows and the dangers of which he appreciates. * * * He assumes the risks of known dangers and such as are so obvious that knowledge of their existence is fairly to be presumed. * * * Where a servant continues to work after learning he is exposed to extraordinary danger arising from a defective condition of some instrumentality used by his master, there may be presented both the question whether he elected to include the additional risk among those which he is deemed to have accepted by virtue of his contractual relations and the question whether, under the circumstances, he has used prudence in remaining in the position where he will have to incur the new hazard. If he receives an injury owing to the existence of the peril which has thus become known to him, it is open to the master to rely either upon the defense of the assumption of risk or upon the defense of contributory negligence." In the instant case, plaintiff testified that upon the discovery of the leak in the

air-pipe line he had the right to decide whether the car should be cut out or he should attempt to repair the leak. He chose the latter course. In so doing, we are of the opinion that he assumed the risk of all danger incident to such course.

The second instruction given in behalf of plaintiff reads as follows: "The court further instructs the jury that if you believe from a preponderance of the evidence that the defendant, at the time in question, was a common carrier by railroad, and that the plaintiff was employed by the defendant in carrying on interstate commerce, and that the plaintiff, while so engaged by the defendant in carrying on interstate commerce, if any, was injured in manner and form as charged in the plaintiff's declaration, and that such injury, if any, resulted by reason of any defect or insufficiency in the appliances furnished by the defendant as charged in the plaintiff's declaration, and that such defect—or insufficiency, if any, was due to the negligence of the defendant, as charged in the plaintiff's declaration, then the plaintiff would be entitled to recover damages against the defendant in this action, and the defense commonly known—and called the fellow-servant doctrine would not relieve the defendant from liability, if any, to the plaintiff." This instruction directs a verdict upon the finding of certain facts for plaintiff but ignores the defense of assumed risk. In our opinion it was reversible error for the court to give this instruction where, as we hold, the defense of assumed risk was available. In the case of the *Illinois Terra Cotta Lumber Co. v. Hanley*, 214 Ill. 243, the court had under consideration an instruction directing a verdict for the plaintiff, but which ignored the defense of assumed risk, and the court held that the giving of such instruction was erroneous. The Supreme Court has also held that an instruction ignoring the question of assumed risk was not cured by instructions given on behalf of defendant. (*Illinois*

*Cent. R. Co. v. Smith,* 208 Ill. 608.) Both these holdings of our Supreme Court were followed in the case of *Cromer v. Borders Coal Co.,* 246 Ill. 451.

The first instruction given for the plaintiff reads as follows: "The court instructs the jury that prior to and on the 18th day of June, A. D. 1920, there was a certain Act of Congress in full force and effect, which provided, among other things, as follows: 'That every common carrier by railroad, while engaged in commerce between any of the several States, shall be liable in damages to any person suffering an injury while he is employed by such carrier in commerce, or in case of death of such employe, to his or her personal representatives, for the benefit of the surviving widow or husband and children of such employe, for such injury or death resulting, in whole or in part, from the negligence of any of the officers, agents or employes of such carrier, or by reason of any defect or insufficiency due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, boats, wharfs or other equipment.' And such act also provides: 'That all actions hereinafter brought against such carrier by railroad under or by virtue of any of the provisions of this act, to recover damages for personal injuries to any employe or where such injuries have resulted in the death, the fact that the employe may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employe; provided, that no such employe who may be injured or killed shall be held to have been guilty of contributory negligence in any case, where the violation by such common carrier of any statute enacted for the safety of the employes contributed to the injury or death of such employe.' And said act also further provides that, 'In any action brought against a common carrier under or by virtue of any of the provisions of this act to recover damages for in-

juries to, or the death of, any of its employes, such employe shall not be held to have assumed the risk of his employment in any case where the violation by such common carrier of any statute enacted for the safety of the employes contributed to the injury or death of such employe.' And said act also further provides that: 'The term common carrier as used in this act shall include the receiver or receivers or other persons or corporations charged with the duty of the management and operation of the business of a common carrier.' " It will be observed that this instruction is an abstract of certain provisions of the Federal Employers' Liability Act including section 4 which covers the doctrine of assumed risk. "Instructions should be framed with reference to the circumstances of the case on trial, and not be expressed in abstract and general terms, when such terms may mislead instead of enlightening a jury." (*Chicago & A. R. Co. v. Utley,* 38 Ill. 410.) While it is not always error to give an abstract proposition of law in an instruction where it is applicable to the case and states the rule of law correctly, yet an instruction should not be given which relates only to generalities and does not give the jury any direction or enlighten them in any manner upon the issues involved in the case on trial and only tends to confuse the jury. (*Sibert v. Shoal Creek Coal Co.,* 181 Ill. App. 11.) It has been held that: "While numerous authorities uphold the practice of giving instructions containing the very language of the statute, yet we think that where a modified construction has already been placed thereon by our Supreme Court, as in the case at bar, the instruction should be framed accordingly, otherwise it would be apt to mislead the jury." (*Waterbury v. Chicago, M. & St. P. Ry. Co.,* 207 Ill. App. 375.)

Section 4 of the Federal Employers' Liability Act has been given a modified construction by the federal courts, but the instruction here under consideration

ignores that modified construction and we believe that it tended to mislead the jury and should not have been given.

For the reasons above stated the judgment in this case must be reversed and the cause remanded. In reaching this conclusion we have also had in mind the fact, as it appears to us, that the plaintiff failed to show by a preponderance of the evidence that the injuries suffered by him were produced by defects or insufficiencies of the appliances, or by the negligence of the defendant. It has been held that in regard to injuries so caused the action is based only upon the negligence of the employer. (*Seaboard Air Line Ry. v. Horton, supra.*)

*Reversed and remanded.*